Judge Coalter,
delivered the opinion of the Court.
The declaration sets out an agreement under seal, between the plaintiff on the one part, and James Weldon, Bushrod Taylor, Eben Taylor, Griffin Taylor and Jibner Osburne, of the other, whereby it was witnessed, that the plaintiff agreed to sell to the said James, fcc. all his crop of wheat in the county of Frederick, at the price of % 1 50 cts. per bushel, or every HO lbs. of merchantable wheat, at the barn of the plaintiff; the whole to be delivered between the date of the said agreement, (13th of January, 1813,) and the 1st of March following; and a covenant on the part of the defendants, to pay him for the said wheat, at the rate of $ 1 50 cts. for each bushel, or every 60lbs. of wheat, within six months from the date. The declaration avers, that the plaintiff did deliver to the said James, after the date, and before the 1st of March, 1813, 4284 bushels of merchantable wheat; and, although it is not averred in this part of the declaration, that this parcel was of his crop in Frederick, it is sufficiently so averred in an after part. It also avers, that the plaintiff was ready to deliver, at his barn, another parcel of 500 bushels, before the 1st of March; the same being part of his-crop in Frederick, whereof the defendants had notice, viz: on the 28lh of January, 1813; but that neither the defendants, nor any person on their behalf, did attend at the barn to receive and remove the same, until after the first day of *78 March, whereby the plaintiff was hindered and obstructed }n getting out, and having ready for delivery, before the said 1st of March, another number of bushels, viz: 1555 i)usiieis 45 pounds, being part of the said crop; and that after the said 1st of March, and before the 29th of June, 1813, he did deliver to the defendants, and they did receive the said two last mentioned parcels, amounting, together with the said 428J bushels, to 2484 bushels and 15lbs. being of the said crop of the plaintiff, the same being merchantable wheat. But, that the defendants have not paid, &c. either for the 1st parcel or for the residue, 8s
To this declaration, the defendants demur and assign five causes of demurrer.
1. The first cause is a mistake in fact, there being no such blanks in the declaration, as alledged.
2. The second is, that there is no averment that the plaintiff delivered the whole ci’op before the 1st of March!
3. The third is, because there is no averment that the plaintiff did deliver, or was ready to delivei*, or was hindered or obstructed from delivering all his crop of wheat, before the 1st of March, but only that he delivered a part, his readiness to deliver another part, and that he was hindered and obstructed in delivering another part; without averring that these were his whole crop.
4. The fourth, because the averment of a delivery of 2484 bushels, after the 1st of March, is out of the contract.
5. The fifth, because the averment that he was hindered and obstructed from delivering a portion of the crop, by the defendants’ not taking away what was ready, is not a performance, or equivalent thereto, of his contract.
The first enquiry which seems to present itself on this statement of the case, is, what is the true construction of the contract, as to the respective duties and obligations of the parties, in relation to'the delivery and taking away of the crop ? Was the plaintiff bound to have it all ready for delivery at one time; and were the defendants not bound *79 to receive and take away any parcel thereof, until the whole was ready; or was the plaintiff at liberty to deliver it in reasonable parcels, from time to time; and were the defendants bound to use reasonable industry in receiving and taking away those parcels as they were prepared, so as to relieve the plaintiff from the risque of keeping them, and to give him room in his barn to get out the residue ?
We are of opinion, not only from the phraseology of the contract “ between the date and the 1st of March;” but from the nature of the crop, and the manner of getting it out, the place of delivery, and the cotemporaneous acts of the parties in delivering and receiving a parcel, the notice that another parcel was ready, and their ultimately receiving other parcels, &c. that the latter is the sound construction; and other matters pro or con, might have appeared on the trial, had the defendants thought proper to test the question in that way. If the contract had been for a delivery at the store or mills of the defendants, the plaintiff surely would have had a right to deliver in parcels, so as to obviate any risque in storing it at his own house, and to have relieved his barn, so as to go on in preparing the residue.
The plaintiff then avers a delivery of one reasonable parcel in this way, a readiness to deliver another parcel of nearly the same amount, and notice of that readiness, as early as the 28th of January, and the failure of the defendants to receive and take it away; whereby, he was hindered and obstructed, Sic. from preparing the residue for delivery before the day. The defendants might have taken issue on this, and either shewn that there was no obstruction, or that they took it away in reasonable time; although the declaration avers that it was not so taken away, until after the 1st of March. They have thought proper, however, to demur, which admits all these matters, and that the plaintiff was thus obstructed and hindered. But it is insisted, that this hindrance was not a matter of which he could complain; as they'were not bound to receive any, *80 until the whole was ready for delivery. In this, however, we think they are mistaken; and being bound to use due diligence in taking the parcels away, they are answerable ^01’ the obstruction, which, it is admitted, arose from their failure in not doing so. For aught that appears, the whole crop would have been prepared and delivered by the day, but for this obstruction or waiver of punctual fulfilment, on or before that time. Indeed, the failure to take away the 500 bushels, and then receiving that and the residue afterwards, would seem strongly to indicate such waiver, as well as a conviction that they were bound to receive and take it away as prepared.
But it is said, the parcels ultimately delivered, are not averred to be the whole crop. This, however, it seems to us, would not avail the defendants. For, suppose the plaintiff was thus prevented from getting out the whole, even before the 29th of June, 1813, and that the residue of the crop was lost or destroyed by the weavil, so as not to be merchantable; who ought to bear that loss ? The plaintiff would have a right also, to go for it; but he also has a right to limit his demand to the merchantable wheat actually delivered; and it is no cause of demurrer, to say that he has limited his demand to less than he had a right to go for.
As to the objection, that the declaration avers a delivery of the first parcel to James Weldon, it is not made a ground of special demurrer; and without enquiring what would be our opinions, had that been done, (especially as the contract was for a sale to James Weldon, &c. without naming the others,) or saying what the &c. meant, we think this is no ground for a general demurrer.
Another ground has been taken, which we think equally fatal to the pretensions of the defendants. That arises from the doctrines which prevailed in the case of Boon v. Eyre, and other cases cited in 1 Saund. 320, note 4, and in 2 Saund. 352, note 3, c. and there commented on. The principle to be collected from these cases, seems to be *81 this; that though covenants may be dependent, as the Court is of opinion that those in this case must be considered, yet when a party has performed a part, for which he can have no other remedy but by an action on the covenant, unless the plea goes to the whole consideration, there, from the necessity of the case, and because the defendant has his remedy for the failure of the plaintiff in part, an action may be maintained in the same manner, as if the covenants were independent.
It seems to be admitted, that in the case of Boon v. Eyre, the covenants were dependent; and if the plea had gone to the whole consideration, to wit: that the plaintiff had no title to the plantation and negroes, he could not have succeeded. This doctrine seems to be strengthened by the case of Campbell v. Jones, 6 Term. Rep. 570; for, although there was no averment that he had instructed the defendant to bleach, yet he had given him the use of his invention, and if he had not taught him the art as soon as he was bound to do, the defendant had his remedy. The case of Havelock v. Geddes and others, in 10 East, 555, is also a strong case to the same effect.
In the case in 8 Term. Rep. 366, Glazebrook v. Woodrow, it is true the school-house was delivered into the possession of the defendant, according to the agreement; but he was also to convey on or before the 1st of August, 1797, on which day the defendant was to pay, &c. It was held, under the particular words of this contract, that the plaintiff could not recover without averring a performance in this respect also; that such was clearly the intention of the parties; that the conveyance was the great consideration, without which the defendant was not to be forced to part with his money, &c. One Judge says, “ How far the determination in Boon v. Eyre, militates against the principles l have laid down, may be a matter of doubt; but the intention of the parties is, or is assumed to be, the governing principle in all the late decisions.Here the party waste receive the possession in 1796, but was dean *82 ly not. to pay until he got a conveyance. This manifest intention could not be departed from. The plaintiff was to give possession, and to risque his not being able to convey- But.here, if he had a title, he Was not without his remedy, as he could re-gain possession by ejectment, and also recover his rents and profits.
But in our case, was it the intention that if all the wheat, except 50 bushels, was delivered before the day, and that, by some accident, that was not ready until the day after, that the defendants should not pay for what was received ?
If the delivery was under the contract, and the plaintiff, not being able to deliver all, had sued on an implied assumpsit, he would have been repelled by the defence, that it was received by virtue of a contract under seal, as such express contract makes that which would otherwise be implied, cease. This, in addition to general principles, seems to be well settled in Young v. Preston, 4 Cranch, 239.
He could only raise an implied assumpsit, by alledging that the delivery of the several parcels was by mistake, and not under the contract. But this would not do, if we are correct in our construction of that contract. The plaintiff then would be without remedy, except in this action, sustainable on the principles above stated. In such case, he might go for the whole crop, or limit his demand to the quantity actually received. If that was not the whole crop, and the defendants had sustained damage for not re. ceiving the whole, by reason that the price had risen, 8ic. they had their remedy by action.
On the whole, we are of opinion to reverse the judgment, over-rule the demurrer, and send the cause back to have a writ of enquiry awarded and executed.